UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                            :

**UNITED STATES OF AMERICA**        :

                                            :     **23 Cr. 319 (ALC)**

            - v. -                   :

**AMIT DAGAR,**                          :

                       **Defendant.**          :

------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

        On January 18, 2024, a jury convicted Defendant Amit Dagar of both counts of the two-count superseding Indictment: (i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (Count One); and (ii) conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371 (Count Two). Defendant seeks a judgment of acquittal on counts one and two of the superseding Indictment, arguing that there was insufficient evidence presented at trial to support the jury's verdict and that the Government failed to prove venue by a preponderance of the evidence. *See* Def. Mem. at 3-4. For the reasons that follow, Defendant's motion is **DENIED**.

## STANDARD OF REVIEW

        Under Rule 29, "the Court is authorized to grant a motion for judgment of acquittal only upon a showing that 'the evidence is insufficient to sustain a conviction.'" *United States v. Hsu*, 643 F. Supp. 2d 574, 575 (S.D.N.Y. 2009) (quoting Fed. R. Crim. P. 29(a)). In applying this standard, the Second Circuit directs trial courts to " 'determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable

doubt.'" *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)); *accord United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) ("'[A] judgment of acquittal' is warranted 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" (citation omitted)).

In evaluating a Rule 29 motion, the Court "view[s] the evidence presented in the light most favorable to the government, and . . . draw[s] all reasonable inferences in its favor." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). "Furthermore, [the Court] considers] the evidence in its totality, not in isolation, and the government need not negate every theory of innocence." *Id.*

It is well-settled that a defendant who challenges the sufficiency of the evidence under Rule 29 "bears a heavy burden." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004). District courts are repeatedly cautioned "to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). The Court is "mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court." *United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006).

## DISCUSSION

**I.     The Evidence Presented at Trial was Sufficient to Sustain Dagar's Conviction on Count One for Securities Fraud**

Defendant argues that no rational trier of fact could have found Dagar guilty of Count One, which charged the Defendant with committing insider trading by trading in Pfizer stock options on the basis of material nonpublic information he learned as part of his employment

with Pfizer and in violation of his duties of trust and confidence to Pfizer. The Court instructed the jury as follows regarding the securities fraud charge:

> In order to find that the defendant is guilty of [the] crime charged in Count One, you must find that the government has proven beyond a reasonable doubt each of the following elements: First, that in connection with the purchase or sale of a security, the defendant employed a device, scheme, or artifice to defraud, or engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of the specified security; Second, that when he engaged in the scheme, the defendant acted knowingly, willfully, and with an intent to defraud; and Third, that in furtherance of the scheme, there occurred at least one use of any means or instrument of transportation or communication in interstate commerce, or the use of the mails, or the use of any facility of any national securities exchange.

Tr. 948:21-949:12; *see also* Jury Instructions at 10 (ECF No. 90). At trial, the Government produced overwhelming evidence to support the jury's guilty verdict on Count 1, namely that Dagar was working on the Paxlovid drug trial (Tr. 232:6-23); that on November 4, 2021, his supervisor learned information about the results of the drug trial and that a press release would be issued the following day (Tr. 253:1-9, GX 202); that the supervisor conveyed to Dagar that Pfizer had gotten "the outcome," that significant work would be required; and that a press release would come the following day (Tr. 260:11-262:6, 263:16-264:5, GX 203); that on November 4, 2021, Dagar purchased short-dated Pfizer call options, expiring the following day, one week later, and two weeks later, giving Dagar the ability to purchase 66,500 shares of Pfizer stock (GX 401); that on November 5. 2021, Pfizer issued a press release that publicly announced the results of the Paxlovid study and the drug's 89 percent efficacy in reducing the risk of hospitalization or death in certain COVID-19 cases (GX 401); and that Dagar sold these call options for significant profits of approximately $272,861 (Superseding Indictment, ECF No. 46 ¶ 6).

In addition, Dagar's supervisor and close friend, Kawleen Oberoi, testified that he communicated with Dagar after they were both interviewed by the FBI, and that Dagar asked him if he had done any trading of Pfizer securities back in November. Tr. 271:9-16. Dagar told

Oberoi that "he [didn't] know what got into his mind. It was really at the spur of the moment, not sure what he was thinking, but he did place a trade on that date." Oberoi also testified that Dagar "sounded very, very low" and "very apologetic, regretful, even though he is a very cheerful individual." Tr. 271:16-272:2. When drawing all reasonable inferences in favor of the Government, the evidence to support Dagar's guilt as to Count One is beyond sufficient to withstand a Rule 29 motion.

### II. The Evidence Presented at Trial was Sufficient to Sustain Dagar's Conviction on Count Two for Conspiracy to Commit Securities Fraud

Defendant's argument—that no rational trier of fact could have found Dagar guilty of conspiracy to commit securities fraud—is also without merit. Count Two charged the Defendant with conspiracy to commit insider trading, specifically that in or about November 2021, the Defendant conspired with Atul Bhiwapurkar to commit insider trading through trading in Pfizer stock options. The Court instructed the jury as follows regarding the conspiracy charge:

> To sustain its burden of proof with respect to the charge of conspiracy, the government must establish beyond a reasonable doubt the following three elements: First, the existence of the conspiracy charged in the indictment; in other words, that there was, in fact, an agreement or understanding to commit at least one of the object crimes charged in the indictment; Second, that the defendant intentionally joined and participated in the conspiracy during the applicable time period; and Third, that any one of the conspirators—not necessarily the defendant, but any one of the parties involved in the conspiracy—knowingly committed at least one overt act in the furtherance of the conspiracy.

Tr. 958:1-14; *see also* Jury Instructions at 18 (ECF No. 90). The Government presented sufficient evidence at trial to demonstrate that Dagar conspired to commit insider trading when he tipped off his close friend, Bhiwapurkar, who purchased 200 short-dated Pfizer call options on the very same day, and just over two hours after Dagar did. The Government also presented evidence that Dagar and Bhiwapurkar then deleted WhatsApp text messages between them on

every single day Bhiwapurkar sold his options. GX 306; GX 307. Finally, Bhiwapurkar sold his options for a significant profit. All of this evidence combined strongly supports the jury's guilty verdict as to Count Two.

### III.  The Government Sufficiently Proved Venue

Defendant, to no avail, makes a last-ditch effort to challenge the jury's finding of venue by a preponderance of the evidence. The Court instructed the jury as follows regarding venue:

> The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that the defendant was ever in the Southern District of New York. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District. Venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue. The act itself need not be a criminal act. It could include, for example, processing or executing a securities trade within this District. It could also include trading securities on an exchange located in this District. And the act need not have been taken by the defendant, so long as the act was part of the crime that you find the defendant committed. Purely ministerial functions and preparatory acts that are unintended and unforeseeable by the defendant are insufficient to prove venue.
>
> Unlike the elements of the offenses which must be proven beyond a reasonable doubt, the Government is required to prove venue only by a preponderance of the evidence. A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime you are considering occurred in this District.

Tr. 965:8-966:9; *see also* Jury Instructions at 26 (ECF No. 90). In *United States v. Chow*, 993 F.3d 125 (2d Cir. 2021), the Second Circuit held that "[w]here the defendant is charged with an offense involving the trading of securities on a stock exchange located in the SDNY, venue in that district is appropriate." *Id.* at 143. Just as Chow's challenge to venue in the Southern District of New York was foreclosed by the established law of this Circuit, so is Dagar's. *United States v. Chow*, 993 F.3d 125, 144 (2d Cir. 2021) (collecting cases). *See, e.g., Svoboda*, 347 F.3d at 483 (holding venue in the SDNY proper although the defendant's only contacts with the district were trades executed on New York-based securities exchanges, because the "savvy investor" could

5

reasonably foresee that trades likely would be executed on such exchange); *United States v. Geibel*, 369 F.3d 682, 697-98 (2d Cir. 2004) (rejecting challenge to SDNY venue on counts involving purchases of options executed on the American Stock Exchange located and headquartered in the SDNY); *Riley*, 638 F. App'x at 62 (holding venue in the SDNY proper because the defendant "could have foreseen that the trading that would result from his communication of inside information to [his tippee] would occur in the Southern District of New York, given that [his company's] shares were publicly traded on NASDAQ, located in Manhattan").

At trial, the Government produced evidence that the Defendant traded options on a securities exchange located in Manhattan, that one of the entities that sold Pfizer options to the Defendant is located in Manhattan, that two of the firms that cleared the trades of the Defendant and his co-conspirator are located in Manhattan, and that trades made by both the defendant and his co-conspirator were cleared and settled through servers located in the Southern District of New York. *See* GX 113; GX 114; GX 115; GX 116; GX 117; GX 119; GX 402. And despite Defendant's arguments to the contrary, it was reasonably foreseeable that when Dagar traded his options contracts in connection with the stock of a New York-based company that trades on the New York Stock Exchange, such acts would occur in the Southern District of New York. The Government presented evidence that Dagar was not an inexperienced or unsophisticated trader, as he engaged in thousands of options transactions over a period of years. Tr. 478:22-479:6.

Accordingly, the Government sufficiently proved venue by a preponderance of the evidence.

## CONCLUSION

For the reasons set forth above, the Defendant's Rule 29 motion for a judgment of acquittal is **DENIED**. The Clerk of the Court is directed to close the open motion at ECF No. 106.

**SO ORDERED.**

Dated:   May 23, 2024
          New York, New York

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**